United States District Court
Southern District of Texas

**ENTERED**

February 26, 2018

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES BURNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-16-664 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE and | § | |
| BRENDA PHILLIPS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant Texas Department of Criminal Justice and Brenda Phillips' Supplemented Motion for Summary Judgment (Doc. 41), Defendant Texas Department of Criminal Justice's Motion for Partial Dismissal (Doc. 52), and the responses filed thereto. It is **RECOMMENDED** that Defendant Texas Department of Criminal Justice's Motion for Partial Dismissal be **GRANTED.** It is **RECOMMENDED** that Defendant Texas Department of Criminal Justice and Brenda Phillips' Supplemented Motion for Summary Judgment be **GRANTED IN PART, DENIED IN PART.**

## I. Case Background

Plaintiff James Burnett filed this action against his former employer, the Texas Department of Criminal Justice ("TDCJ") and his supervisor, Brenda Phillips ("Phillips"), alleging sexual

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 20, Ord. Dated May 27, 2016.

harassment, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Texas Commission on Human Rights Act ("TCHRA"), and 42 U.S.C. § 1983 ("Section 1983").[2] He also raised state law claims of assault and battery, defamation, invasion of privacy, and intentional infliction of emotional distress.[3]

## A.   **Factual Background**

Plaintiff began working for TDCJ on October 18, 2012, as a correctional officer and, upon commencement of employment, signed a form acknowledging receipt of numerous policy documents, including information about how to report sexual harassment.[4] Sometime during the summer of 2013, Phillips became Plaintiff's supervisor.

According to Plaintiff, Phillips grabbed Plaintiff's back side several times in August 2013.[5] She also put her arms around his waist or shoulders when walking next to him during the same time frame.[6] On each occasion, Plaintiff pushed her away but voiced no other opposition to the contact.[7] Plaintiff also claims that

---

[2]    See Doc. 1, Pl.'s Orig. Compl. pp. 13-23.

[3]    See id.

[4]    See Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., New Employee Acknowledgment Receipt pp. 62-63.

[5]    See Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. p. 66.

[6]    See id. p. 117.

[7]    See id. p. 62.

Phillips asked him if he "thought that anyone would say anything if she threw [him] down in the hallway and raped [him] right there."[8] Plaintiff stated that Phillips told him, "Boy if you only new [sic] what I could do to you."[9]  Plaintiff stated that he tried to avoid Phillips as much as possible.[10]

During the evening shift of August 30, 2013, Plaintiff stated that Phillips grabbed his back side.[11]  Plaintiff asked Correction Officer Jacob Little ("Little") if he had seen the contact, and Little responded affirmatively, commenting that Phillips had just done the same to him.[12]  Later that same shift, Plaintiff claimed Phillips put her hand in Plaintiff's pocket and "felt around."[13] Plaintiff reported that he was embarrassed and aggravated by this conduct.[14]

Although Plaintiff's testimony is not completely consistent about when he reported the August 30 incident to his supervisors, he stated that he told Correction Officer David Wickersham

---

[8]     See Doc. 41-2, App'x to Defs.' Mot. for Summ. J. Pl.'s EEO Complaint Form Narrative Statement p. 6.

[9]     Id.

[10]    See Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. p. 150.

[11]    See Doc. 41-2, App'x to Defs.' Mot. for Summ. J., Pl.'s EEO Complaint Form Narrative Statement p. 6.

[12]    Id.

[13]    Id.

[14]    Id.

3

("Wickersham") about the incident immediately following the encounter with Phillips.[15]   Plaintiff stated that he also told Sergeant Anthony Gundacker ("Sergeant Gundacker") and Little about the incidents during the August 30 shift.[16]   Plaintiff also made a complaint about the contacts to Lieutenant Danny Landrum ("Lieutenant Landrum").[17]

On August 30, 2013, Little claimed he was touched inappropriately by Phillips less than a minute before she touched Plaintiff.[18]   Relevant to the present dispute, Little stated that he told Sergeant Gundacker about Phillips' conduct during the early morning hours of August 31, 2013, and that Sergeant Gundacker stated he would follow up on Little's report.[19]   Little also told Wickersham about both incidents sometime during that shift.[20]   After

---

[15]     See Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. p. 91. Wickersham verified that Plaintiff told him that he had been inappropriately touched by Phillips on that date. See Doc. 39-4, Ex. D to Pl.'s Mot. for Summ. J., Dep. of Wickersham pp. 54-57, 62.

[16]     See Doc. 41-2, App'x to Defs.' Mot. for Summ. J., Pl.'s EEO Complaint Form Narrative Statement p. 6.

[17]     See Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. pp. 99, 103. At another point in his deposition, Plaintiff stated that he first reported the harassment "more than a week" later, but not a month later. Id. p. 66. He was also somewhat inconsistent about to whom he reported the harassment, stating, "I think – Gundacker. Maybe Wickersham, but then I remember talking to Lieutenant Burleyson, but he said it was just hearsay. It would all go away." Id.

[18]     See Doc. 39-3, Ex. C to Pl.'s Mot. for Summ. J., Dep. of Little p. 61.

[19]     See id. pp. 64, 70-71, 77.

[20]     See id. p. 75. Wickersham verified that Little said that Phillips had touched him inappropriately during the August 30, 2013 shift. See Doc. 39-4, Ex. D to Pl.'s Mot. for Summ. J., Dep. of Wickersham, pp. 54-57.

the shift ended, Little stated, he observed Sergeant Gundacker and Lieutenant Joey Burleyson ("Lieutenant Burleyson") laughing about Little's complaint of sexual harassment by Phillips.[21]  Wickersham confirmed that Sergeant Gundacker said that he had spoken to both Plaintiff and Little about the incidents.[22]

Several days later, on September 5, 2013, Joan Wickersham, wife of Wickersham, also a TDCJ employee, reported to TDCJ Employee Relations Intake that her husband told her that Little told her husband that Phillips had grabbed Little's groin area and that Plaintiff had made a similar complaint about Phillips.[23]  According to Joan Wickersham, her husband reported the two incidents to Lieutenant Burleyson and Sergeant Gundacker during the August 30, 2013 shift.[24]  At his deposition, Wickersham verified that the incidents had been reported by Sergeant Gundacker to Lieutenant Burleyson.[25]

---

[21]    See Doc. 39-3, Ex. C to Pl.'s Mot. for Summ. J., Dep. of Little, pp. 71-72, 74, 76-77.

[22]    See Doc. 39-4, Ex. D to Pl.'s Mot. for Summ. J., Dep. of Wickersham p. 65.

[23]    See Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., Record of Email from Joan Wickersham p. 12.

[24]    Id.  This internal TDCJ document was attached to the summary judgment motion without an authenticating affidavit.  Plaintiff raised no specific objection to this document, and the court assumes that TDCJ could authenticate the document as a business record under Federal Rule of Evidence 803(6). However, the statements related therein are hearsay and cannot be considered for their truth.  See Fed. R. Evid. 802.  The court will consider only that on September 5, 2013, TDCJ received a report of the August 30, 2013 incidents from Joan Wickersham and not the truth of the matters related by Joan Wickersham.

[25]    See Doc. 39-4, Ex. 4 to Pl.'s Mot. for Summ. J., Dep. of Wickersham p. 154.

Per TDCJ policy, sexual harassment was prohibited, and "the complainant is required to submit a signed written complaint in order for the complaint to be processed."[26]   The initial report of such an allegation may be verbal and may be made by any employee, not just the complainant.[27]   The TDCJ policy required that a supervisor contact Employee Relations Intake within seventy-two hours of his witnessing or being notified of prohibited conduct.[28] The TDCJ policy required a supervisor to contact Employee Relations Intake even if the employee requested that the matter be kept confidential or that no action be taken.[29]   When an intake officer received notification of a complaint, he was required to advise the complainant how to fill out the complaint form and, if the notification was verbal, the intake officer was to encourage the complainant to fill out the appropriate written form.[30]

In response to the question whether it was common knowledge that Phillips was harassing him and Plaintiff, Little stated, "Everyone knew."[31]   According to Plaintiff, Lieutenant Landrum

---

[26]    See Doc. 44, App'x to Pl.'s Resp. to Defs.' Suppl. Mot. for Summ. J., Ex. 3, TDCJ Policy pp. 6-8.

[27]    Id. p. 6.

[28]    Id.

[29]    Id.

[30]    Id.

[31]    See Doc. 39-3, Ex. C to Pl.'s Mot. for Summ. J., Dep. of Little p. 104.

6

thought the physical contact by Phillips was a "big joke."[32]   As a result, Plaintiff admitted that he was reluctant to make a written complaint as he hoped that the situation could be informally resolved by his immediate supervisors through a reassignment.[33]

On September 17, 2013, Little complained that Phillips again touched him inappropriately, prompting him to file a formal complaint with TDCJ that same day.[34]   On September 18, 2013, TDCJ ordered Plaintiff to file a written complaint concerning Phillips' alleged conduct directed at him.[35]   Plaintiff stated that, as of September 18, 2013, the sexual harassment from Phillips was "still going on just about every day that she's there.  I don't feel like TDCJ has protected me from the abuse because supervisors have known about it and its still continues [sic]."[36]

By September 23, 2013, Phillips had been reassigned to another work area and no longer supervised Plaintiff or Little.[37]   TDCJ

---

[32]     See Doc. 42-1, App'x to Defs.'Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. p. 99.   According to Plaintiff, Lieutenant Landrum would caress Plaintiff's hands and draw Plaintiff's attention to Phillips, referring to Phillips as Plaintiff's "girl."  Id. p. 103.

[33]     See id. pp. 102, 161.

[34]     See Doc. 39-3, Ex. C to Pl.'s Mot. for Summ. J., Dep. of Little, pp. 79-80.

[35]     See Doc. 42-1, App'x to Defs.'Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. p. 102.

[36]     Id.   There is no evidence that the harassment continued after Phillips' reassignment.

[37]     See Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., Notification of EEO Investigation & Interim Remedial Actions p. 15.  Little testified that Phillips was reassigned on Sept. 17, 2013.  See Doc. 39-3, Ex. C to Pl.'s Mot. for Summ. J., Dep. of Little p. 83.

conducted an internal investigation of the allegations leveled against Phillips by Plaintiff and Little.[38]  The investigation was closed after Plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission.[39]

It is undisputed that Plaintiff was injured in an automobile accident in December 2013.  TDCJ granted Plaintiff extended sick leave and leave without pay through April 23, 2014.[40]  On August 11, 2014, Plaintiff filed an application for unemployment benefits with the Texas Workforce Commission.[41]  He indicated on the form that the reason he was no longer employed by TDCJ was: "Quit. I was in a car accident."[42]  On October 28, 2014, TDCJ administratively terminated Plaintiff's employment "due to expiration of 180 days LWOP."[43]

---

[38]    The summary judgment evidence contains a number of documents related to those investigations.  See, e.g., Doc. 42-1, App'x to Defs.' Suppl. Mot. for Summ. J., EEO Files for James Burnett, pp. 85-151.  These documents contain summaries of witnesses' unsworn statements taken during the investigation that are clearly hearsay.  See Fed. R. Evid. 802.  The court does not include and will not consider any "facts" contained in those documents.

[39]    See Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J. Administrative Closure p. 147.  The court assumes this fact is not disputed.

[40]    See Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., Inter-Office Communication Dated Apr. 15, 2014 p. 31, Sick Leave Pool Application for Withdrawal p. 32, Inter-Office Communications Dated May 14, 2014 p. 33, and Sick Leave Pool Application for Withdrawal p. 33, TDCJ form SYSM INBASKET PRINT p. 37.  These documents were not authenticated, however the court will assume that TDCJ could authenticate them as business records if the case went to trial.

[41]    See Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., Notice of Application for Unemployment Benefits pp. 34-35.  This document was not authenticated, however the court will assume that TDCJ could authenticate it as a business record if the case went to trial.

[42]    See id. p. 35.

[43]    See Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., TDCJ form SYSM INBASKET PRINT p. 36.  The court assumes, in the absence of controversy, that "LWOP" stands for "leave without pay."  TDCJ also cites to its policy on

**B.  <u>Procedural History</u>**

On March 14, 2014, Plaintiff filed a complaint of discrimination with the Texas Workforce Commission Civil Rights Division.[44]  On the form, Plaintiff stated that he had been subjected to sexual harassment and retaliation from August 1, 2013, to January 15, 2014.[45]  On June 11, 2015, the Texas Workforce Commission, Civil Rights Division director issued a finding of reasonable cause to believe that TDCJ had engaged in an unlawful employment practice and invited the parties to resolve the complaint informally.[46]  On March 11, 2016, the Texas Workforce Commission issued a right to sue letter to Plaintiff.

On March 14, 2016, Plaintiff filed the present suit raising numerous claims arising out of his employment.  On May 25, 2016, Plaintiff amended his complaint.[47]  The live pleading dropped the state law tort claims and only alleged sexual harassment and

---

"Leaves without Pay," directing the court to its website.  The court is not required to search the internet for summary judgment evidence and refuses to speculate, in the absence of a sworn declaration of a person with knowledge, that the policy was actually applied in Plaintiff's case.

[44]  <u>See</u> Doc. 41-2, App'x to Defs.' Suppl. Mot. for Summ. J., Pl.'s TCHRA/EEOC Compl. of Discrimination p. 116.  This document notes that the original charge was received on February 5, 2014.  <u>Id.</u>

[45]  <u>Id.</u>  Plaintiff explained that his supervisor made sexual comments to him and grabbed his private areas.  He also reported that he was harassed for reporting the situation to TDCJ's "EEO Section."  <u>Id.</u>  There is no explanation in the document how, or in what form the harassment and retaliation continued after Plaintiff was on extended sick leave.

[46]  <u>See</u> Doc. 16-1, Ex. 1 to Pl.'s Am. Compl., Letter of Determination p. 8.

[47]  <u>See</u> Doc. 16, Pl.'s Am. Compl.

hostile work environment in violation of Title VII and the TCHRA, aiding and abetting discrimination in violation of the TCHRA, retaliation under Title VII and the TCHRA, and violation of Plaintiff's equal protection rights under Section 1983.[48]

Presently pending before the court are motions filed by Defendants seeking dismissal of all claims.[49]  Plaintiff filed no response to TDCJ's motion for partial dismissal.[50]

## II.  Legal Standards

### A.  Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3).  The party asserting jurisdiction bears the burden of proof that jurisdiction does exist.  In re FEMA Trailer Formaldehyde Prods. Liab. Litig. [hereinafter In re FEMA], 646 F.3d 185, 189 (5th Cir. 2011)(citing Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)).

A claim of Eleventh Amendment immunity must be addressed as an initial inquiry because, if it is applicable, it deprives the court

---

[48]    See id. pp. 12-17.

[49]    On June 16, 2017, the court granted Plaintiff's motion to withdraw his motion for partial summary judgment.  See Doc. 48, Ord. Dated June 16, 2017.

[50]    Local Rules for the Southern District of Texas state that "[f]ailure to respond [to a motion] will be taken as a representation of no opposition." L.R. 7.4.  The non-moving party has twenty-one days to file a response before the lack of a response is considered a lack of opposition.  See L.R. 7.3, 7.4  Even if a party fails to oppose a dispositive motion, the court will not grant the motion without carefully considering the movant's arguments.  See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).

of subject matter jurisdiction over the suit.  See United States v. Texas Tech University, 171 F.3d 279, 286, (5th Cir. 1999).

**B.    Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case

for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.  Analysis

TDCJ has moved to dismiss Plaintiff's TCHRA claims on the ground that they are barred from prosecution in federal court by the Eleventh Amendment.  TDCJ and Phillips also challenge Plaintiff's ability to overcome the affirmative defense to Title VII liability under the Ellerth/Faragher[51] line of cases and further argue that Plaintiff cannot establish a prima facie claim for retaliation under Title VII because he was not subjected to an adverse employment action and because there is no causal connection between his protected activity and his separation from employment. Finally, TDCJ and Phillips move for summary judgment on Plaintiff's claims arising under 42 U.S.C. § 1983.  The court first considers TDCJ's motion to dismiss.

### A.  Eleventh Amendment Immunity - TCHRA Claims[52]

---

[51]    Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

[52]    The TCHRA does not create a cause of action against supervisors or individual employees, only employers.  See City of Austin v. Gifford, 824 S.W.2d 735, 742 (Tex. App. Austin 1992).  TDCJ is the only party that may be sued under

Defendant TDCJ argues that Eleventh Amendment immunity bars Plaintiff's claims arising under the TCHRA.  The court agrees.

In Texas, the state and its agencies are immune from suit in state and federal courts unless the State Legislature waives its sovereign immunity.  Texas v. Lueck, 290 S.W.3d 876, 880 (Tex. 2009).  A state's waiver of sovereign immunity for suits brought in state court cannot be extended to waive Eleventh Amendment immunity in federal court.  See Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567, 575-76 (5th Cir. 2002)("Even when a State consents to suit in its own courts, . . . it may retain Eleventh Amendment immunity from suit in federal court.").  A state's waiver of sovereign immunity must be "unequivocally expressed."  Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 332 (5th Cir. 2002)(citing Edelman v. Jordan, 415 U.S. 651, 673 (1974); Magnolia Venture Capital Corp. v. Prudential Sec. Inc., 151 F.3d 439, 443-44 (5th Cir. 1998).

In Perez, the Fifth Circuit expressly found that the TCHRA did not waive sovereign immunity for suits brought in federal court.  Perez, 307 F.3d at 332; see also Hernandez v. Tex. Dep't of Human Servs., 91 F. App'x 934, 935 (5th Cir. 2004)(unpublished).  Accordingly, this court lacks subject matter jurisdiction over Plaintiff's TCHRA claims.  These claims must be dismissed.

## B.  Title VII

---

the TCHRA.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Under Title VII, Plaintiff brought claims of hostile work environment and retaliation.

**1. Sexual Harassment/Hostile Work Environment**

In order to prevail on a Title VII hostile work environment claim based on sex, a plaintiff must provide evidence that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the complained-of harassment was based on his sex; (4) the complained-of harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012). The fifth element does not apply when the alleged harasser is the plaintiff's supervisor. See Reine v. Honeywell Int'l, Inc., 362 F. App'x 395, 397 (5th Cir. 2010)(unpublished)(citing LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 393 (5th Cir. 2007)).

If a plaintiff is able to make a prima facie showing of a hostile work environment and no tangible adverse employment action occurred, an employer may assert an affirmative defense to

14

liability.[53]  <u>Faragher</u>, 524 U.S. at 807; <u>Ellerth</u>, 524 U.S. at 765.
The <u>Ellerth/Faragher</u> defense requires an employer to show: "(1) the
employer exercised reasonable care to prevent and correct promptly
any 'harassing behavior;' and (2) the plaintiff 'unreasonably
failed to take advantage of any preventive or corrective
opportunities provided by the employer or to avoid harm
otherwise.'"  <u>Id.</u>

In its motion for summary judgment, TDCJ contends that it has
policies in place that would satisfy the first prong of the
<u>Ellerth/Faragher</u> defense and that it acted promptly to move
Phillips to another position after Plaintiff filed a written
report.  As to the second prong, TDCJ points to Plaintiff's
reluctance to report the harassment despite clear TDCJ policies
that required him to do so.  TDCJ argues that Plaintiff's
reluctance to report the harassment was unreasonable as a matter of
law and requires that summary judgment be entered against him on
this claim.

In contrast, Plaintiff argues that TDCJ is not entitled to
assert the <u>Ellerth/Faragher</u> defense because the first prong of the
test required it to promptly correct Phillips' harassing behavior

---

[53]    Plaintiff does not dispute that there was no tangible adverse
employment action involved in the alleged sexual harassment and focuses his
opposition to summary judgment on the reasonableness of TDCJ's actions. <u>See</u> Doc.
43, Pl.'s Resp. to Defs.' Mot. for Summ. J. pp. 7-8.  Defendant does not
challenge Plaintiff's ability to allege a prima facie case of sexual harassment
and focuses on Plaintiff's inability to raise a fact issue on its
<u>Ellerth/Faragher</u> defense.

and over a month passed before TDCJ requested that Plaintiff report the harassment.   In support of the assertion that the delay consumed more than a month, Plaintiff points to his equivocal deposition testimony.   This is the exchange:

Q.  Did you ever report that she was grabbing your butt during the month of August to anyone after it happened?

A.  Yes.

Q.  How many times did it happen before you reported it?

A.  I don't think it happened but a couple.

Q.  So you would have reported it within a week of it first happening or a month or what?

A.  Well, it would have been more than a week, not a month. I'm sure.

Q.  Who was the first person you reported it to?

A.  I think – I think Gundacker.  Maybe Wickersham, but then I remember talking to Lieutenant Burleyson, but he said it was just hearsay.  It would all go away.[54]

Plaintiff argues that this testimony supports his argument that he notified his supervisors of the harassment in early-to-mid-August 2013.  As the testimony fails to include any time frame, the court cannot agree that there is evidence supporting a conclusion that a supervisor was notified of the harassment prior to the

---

[54]   See Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J., Ex. 1, Pl.'s Dep. p. 66.

evening shift of August 30, 2013.  However, Plaintiff testified that he notified Wickersham, Little, and Sergeant Gundacker of the incident during the August 30, 2013 shift.[55]  And, at some point in time, Lieutenant Burleyson asked Plaintiff about the incident.[56] Little testified that in the early morning hours of August 31, 2013, he told Sergeant Gundacker that Phillips inappropriately touched him and that Sergeant Gundacker told him he would report it to "the lieutenant," presumably Lieutenant Burleyson.[57]  Wickersham testified that he told Lieutenant Burleyson and Sergeant Gundacker about Little and Plaintiff's complaints against Phillips during the August 30, 2013 shift.[58]  Also, it is undisputed that on September 5, 2013, TDCJ received Joan Wickersham's report that Phillips had inappropriately touched Little and Plaintiff several days earlier, and that TDCJ did not require Plaintiff to file a report on the harassment until nearly two weeks later, on September 18, 2013.

TDCJ policy requires a supervisor to notify TDCJ Employee Relations Intake within seventy-two hours of notification of a prohibited action.  TDCJ took no action within the seventy-two hour window following either the notification of supervisors on August

---

[55]    See  Doc. 42-1, App'x to Defs.' Resp. to Pl.'s Mot. for Summ. J., Pl.'s Dep. pp. 92-93, 99, 103.

[56]    Id. p. 93.

[57]    See Doc. 39-3, Ex. C to Pl.'s Mot. for Summ. J., Dep. of Jacob Little, pp. 64, 70-71, 76-77.

[58]    See Doc. 39-4, Ex. D to Pl.'s Mot. for Summ. J., Dep. of Wickersham p. 65.

30, 2013, or the notification by Joan Wickersham on September 5, 2013, but waited another two to three weeks before taking remedial action.  Whether this delay was factually reasonable under the circumstances must be decided by the jury.

In light of the summary judgment evidence, the court finds there is a fact issue on the first prong of TDCJ's Ellerth/Faragher defense, that is, did TDCJ exercise reasonable care to prevent and correct promptly any harassing behavior of which it had notice.  In light of this determination, the court need not rule on whether Plaintiff unreasonably failed to take advantage of TDCJ's policies requiring him to report the harassment or otherwise to mitigate the harassment and leaves those issues to the jury's consideration as well.

### 2. Retaliation

Defendant moves for summary judgment on Plaintiff's retaliation claim, contending that Plaintiff: (1) has failed to establish a prima facie case of retaliation under Title VII; and (2) cannot show that Defendant's legitimate, non-retaliatory reason for dismissing Plaintiff was pretext for retaliation.  The court's analysis begins and ends with Defendant's first argument.

A plaintiff seeking to recover on a Title VII retaliation claim must first establish a prima facie case showing that (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected

activity and the adverse action.  <u>Harvill v. Westward Commc'ns,</u>
<u>L.L.C.</u>, 433 F.3d 428, 439 (5th Cir. 2005).  A plaintiff has engaged
in a protected activity if he "(1) 'opposed any practice made an
unlawful employment practice' by Title VII or (2) 'made a charge,
testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing' under Title VII." <u>Grimes v.</u>
<u>Tex. Dep't of Mental Health & Mental Retardation</u>, 102 F.3d 137, 140
(5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3); <u>Hough v. Tex. Dep't</u>
<u>of State Health Servs.</u>, No. H-10-2206, slip op., 2012 WL 3756536,
at *1 (S.D. Tex. Aug. 28, 2012) (quoting <u>Grimes</u>, 102 F.3d at 140).

TDCJ does not dispute that Plaintiff engaged in a protected
activity by complaining of sexual harassment.  It argues that it
did not terminate Plaintiff's employment because, prior to his
removal from the payroll in October 2014, Plaintiff informed the
Texas Workforce Commission that the reason for his unemployment was
that he was unable to work due to injuries from a car accident.
TDCJ also contests whether there is any evidence establishing a
causal nexus between the termination and the protected activity.

The summary judgment evidence shows that after Plaintiff's
December 2013 automobile accident, he received accrued sick leave
and additional leave from the sick leave pool, until April 23,
2014, after which he was presumably on leave without pay.  In
Plaintiff's Texas Workforce Commission application for unemployment
benefits, filed in August 2014, Plaintiff gave his reason for

unemployment as, "Quit.  I was in a car accident."  The summary judgment record contains a payroll notation that Plaintiff's employment was terminated due to the passage of 180 days on leave without pay status.  Plaintiff does not dispute that he had been on leave without pay status for 180 days at the time of his termination, and it does not appear that these facts could support a conclusion that Plaintiff was subjected to an adverse employment action.  However, even if the removal of Plaintiff from TDCJ's employment rolls could be deemed adverse under these circumstances, Plaintiff fails to raise a fact issue connecting his protected activity to the termination.

In an attempt to causally connect the protected activity with his separation from employment, Plaintiff argues that he "ultimately passed out while driving because he was so upset about what was going on at work that he had an accident and severely injured his back."[59]  Even if the court were to consider as admissible evidence Plaintiff's belief that the sexual harassment and his automobile accident were causally related, there is no evidence connecting Plaintiff's protected activity with TDCJ's decision to remove him from the employment rolls based on his long-term inability to work after his accident.  At the time of his termination in October 2014, Plaintiff had not worked at TDCJ since December 2013; his paid leave had expired six months earlier; and

---

[59]    See Doc. 42, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 10.

he was unable to return to work.  In the absence of any evidence that would raise a triable issue of retaliation, summary judgment should be granted in TDCJ's favor on this claim.

### 3.  Section 1983

TDCJ and Phillips move for summary judgment on Plaintiff's Section 1983 claim on two bases:  first, that Plaintiff failed to specify what federal rights or statutes were violated by Phillips and, second, that any claim brought under Section 1983 is barred by limitations.

A plaintiff can establish a prima facie case under 42 U.S.C. § 1983[60] by alleging 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law.  Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).  The statute creates no substantive right, but only provides remedies for deprivations of rights created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Title VII cannot serve as a basis for a civil rights action under Section 1983.  See  Irby v. Sullivan, 737 F.2d 1418, 1428-30 (5th Cir. 1984).

---

[60]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section F of Plaintiff's Amended Complaint alleges that Phillips was Plaintiff's supervisor and that her conduct was intentional and violated his rights under Section 1983. In Section G of his Amended Complaint, Plaintiff complains that the discriminatory treatment to which he was subjected by Phillips violated his right to equal protection under the law.[61]   In the absence of more detailed allegations, the court characterizes the amended complaint's Section F and G as raising only equal protection claims against Phillips and TDCJ.[62]

In Southard v. Tex. Bd. of Crim. J., 114 F.3d 539, 550 (5th Cir. 1997), the Fifth Circuit held that "[s]ex discrimination and sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment."   The court finds that Plaintiff has raised only an equal protection claim against Phillips and TDCJ pursuant to Section 1983.

The court turns to Defendants' argument that this claim is time-barred.   Section 1983 does not contain a statute of limitations and courts must look to the general statute of limitations governing personal injuries in the forum state.   See Heilman v. City of Beaumont, 638 F. App'x 363, 366 (5th Cir.

---

[61]   See Doc. 16, Pl.'s Am. Compl. pp. 16-17.

[62]   Although Plaintiff seems to argue that he can pursue claims under the TCHRA through Section 1983, the TCHRA is a state statute and cannot, by definition, form the basis of a right created by federal law and made actionable by Section 1983.   See Doc. 43, Pl.'s Resp. to Defs.' Suppl. Mot. for Summ. J. p. 12.

2016)(unpublished)(citing <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 576 (5th Cir. 2001)).  In Texas, the limitations period for personal injury claims is two years.  <u>See</u> Tex. Civ. Prac. & Rem. Code § 16.003(a).  Limitations begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." <u>Burrell v. Newsome</u>, 883 F.2d 416, 418 (5th Cir. 1989).

As outlined in the summary judgment evidence, Plaintiff testified that Phillips harassed and inappropriately touched him during the month of August 2013 and possibly through mid-September 2013.  These are actions of which Plaintiff clearly was aware and limitations commenced at the time of the actions.  Phillips was reassigned in mid-September 2013, and there is no evidence that she had any harassing contact with Plaintiff after her reassignment. Plaintiff did not file this lawsuit until March 14, 2016. Plaintiff's claims arising under Section 1983 are time-barred.

## IV.  Conclusion

For the reasons explained above, it is **RECOMMENDED** that Defendant Texas Department of Criminal Justice's Motion for Partial Dismissal (Doc. 52) be **GRANTED.**  It is **RECOMMENDED** that Defendant Texas Department of Criminal Justice and Brenda Phillips' Supplemental Motion for Summary Judgment (Doc. 41) be **GRANTED IN PART, DENIED IN PART.**  If this recommendation is adopted, the only issues to be tried are Plaintiff's hostile work environment/sexual harassment claim arising under Title VII and Defendant's

23

affirmative defense under the <u>Ellerth/Faragher</u> doctrine.

    **SIGNED** this <u>26</u><sup>th</sup> day of February, 2018.


_____
U.S. MAGISTRATE JUDGE